GEORGE M. CLARKE, Respondent, v. STEPHEN R. GORDON and Another, Appellants, Impleaded with CLAUDIA B. GORDON and Another, Defendants.

Third Department, March 5, 1936.

*Watts, Oakes & Bright [John Bright* of counsel; *R. W. Caudell* and *Abram F. Servin* with him on the brief], for the appellants.

*Ransom H. Gillett,* for the respondent.

CRAPSER, J. The plaintiff charges the defendants with willfully, wickedly and maliciously enticing his child away from the plaintiff's custody and control and harboring her.

The plaintiff was married to his wife, Leslie Gordon, on November 25, 1915. They lived a short time in New York. From 1915 to 1926 the respondent and his wife and her mother lived together at various hotels that he was managing. Two children were born, Leslie in 1916 and Elva, the one which this action is about, in 1918. Leslie died in 1931 before this action was started.

On April 27, 1926, the respondent and his wife entered into a separation agreement. Under the agreement the wife had the sole custody and control of the children and their education until they should attain the age of twenty-one years. The husband was to have the right to see them at all times convenient to the wife.

After the separation the plaintiff went to Boston and in about three weeks returned to Greenwood lake, where he had an interview with his wife, but he did not see his children or make any attempt to see them. He returned to Boston and for some time was engaged in the selling of an automotive service in which he was unsuccessful. He went from there to Englewood, N. J., where he was an automobile salesman for over a year. He then came up to conduct the Peacock Inn at New Lebanon Center which he conducted up to the fall before the trial.

From the time that the plaintiff met his wife at Greenwood lake, a few days after the separation, until her death in August, 1931, he never attempted to see either her or the children and he wrote to them only once or twice at the most during all of this time, including the time he was at Englewood when he was less than forty miles from where he knew them to be; he testifies that he knew they were all at Greenwood lake.

He had a letter from his wife on June 27, 1931, telling him about the death of the elder daughter during the preceding spring. He also received a letter from Elva. The last letter from his wife was shortly prior to her undergoing an operation. She had been injured in an automobile accident which required her frequent visit to a hospital until the last one in August when she underwent an operation from which she died.

Previous to the last operation plaintiff's wife asked her two brothers, the appellants in this action, that in case anything happened to her to take care of Elva, and after the mother died Florence Gordon, grandmother, and the brothers consulted Elva, who was then fourteen years old, as to what her desires were respecting her living arrangements. The grandmother was over seventy years of age and not in good health at the time and one uncle,

Stephen R. Gordon, lived in New York city, and the other uncle, William Stuart Gordon, lived in North Tonawanda, near the city of Buffalo. Elva chose to live with her uncle William Stuart Gordon. She went to Buffalo and was entered in the Park School at Buffalo. She spent the summer vacation of 1933 at Greenwood lake with Stephen R. Gordon and in the fall of 1933 she entered the Buffalo Seminary, living with other pupils in a private home about two blocks from the school. She was supported by her two uncles during this time.

In September, 1931, the plaintiff, evidently not knowing about his wife's death, wrote to her, giving a description of the hotel where he was employed and suggesting that she and Elva drive over there by Newburgh, and in October, 1931, he again wrote to his wife at Hewitt, N. J., and in November, 1931, he wrote, registering the letter. This letter was apparently forwarded to Jenkintown, Penn., and he received a return receipt card signed by Vera Vincent, a servant in the family of Mr. Hull, whose wife was Mrs. Gordon's sister.

The plaintiff then consulted Mr. O'Sullivan, a New York attorney, who ascertained in December, 1931, that Mrs. Clarke was dead. Mr. O'Sullivan in January or February, 1932, called up Stephen Gordon; he stated that he was Mr. Clarke's attorney and that he would like to make an appointment to see him about Mrs. Clarke's affairs. Mr. Gordon refused to see him and referred him to his lawyer. Mr. O'Sullivan testified on cross-examination that Gordon refused to give him Elva's address and said that he would take all legal means to prevent Clarke seeing Elva.

On November 12, 1931, Elva Clarke, then over fourteen years of age, filed a petition in the Orange county surrogate's office praying for the appointment of her uncle Stephen R. Gordon as guardian of her person and property. She said that the residence of her father was unknown and stated that he had abandoned her on the 27th of April, 1926, and had not contributed in any way to her support and that her mother had died on the 5th of August, 1931, a resident of the town of Warwick in the county of Orange. Stephen R. Gordon executed a consent to his appointment as guardian and letters of guardianship were issued on the 28th day of December, 1931. On June 21, 1932, the plaintiff made a petition to the surrogate of Orange county for an order to show cause why the proceedings appointing Stephen R. Gordon should not be vacated and an order was granted on June 28, 1932. An answer was made by Stephen R. Gordon to the petition, and the surrogate having taken proof denied the petition to intervene; on an appeal, the Appellate Division of the Second Department vacated the

order appointing the guardian on the grounds that the surrogate was without jurisdiction to entertain the application for the appointment of a general guardian because of the non-residence of the infant. (240 App. Div. 728, 766.)

The wife of the plaintiff executed a will in 1924, two years before the separation agreement, and devised her property to her brothers in trust for the benefit of her daughters. On October 26, 1932, the plaintiff filed objections to said will but later withdrew them. He testified that it seemed to him futile.

In July, 1933, Elva, then nearly sixteen years old, filed a petition in the Surrogate's Court of Columbia county for the appointment of Stephen R. Gordon as guardian of her person and property; her father was cited upon this petition. After a conference plaintiff waived his rights to the appointment of guardian of her property and on the new petition the Farmers National Bank of Hudson was appointed guardian of her property.

Between August, 1932, and December, 1932, the plaintiff was sending registered letters to Elva, the return receipts of which were receipted by her. He continued writing her, registering all letters and had no reply until November 14, 1933, when he received a letter in which she asked him to stop writing her, but said that if he must write her to write her at 14 Chapin parkway, Buffalo. She told him that she had received all his letters and expected to see him during her Christmas vacation. That letter was written November 14, 1933. He made no reply to that letter and about December 13, 1933, Elva wrote him saying that she had decided that she did not care to see or communicate with him in any way, and the action was commenced in March, 1934.

Mr. Gillett testified that his services in the proceedings relating to the guardianship and in regard to the contest of the will were worth $5,000, but that he rendered a bill to Mr. Clarke for $2,500.

There is no proof in the record that Clarke ever asked for the custody of Elva; he had relinquished custody and had evidently surrendered her to her mother, and after he knew that she was in Buffalo he made no attempt to see her. She was not examined before trial and she was not a witness at the trial.

A motion was made at the close of the plaintiff's case to dismiss the complaint on the grounds that plaintiff had failed to prove the cause of action alleged in the complaint. The motion was renewed at the close of all the evidence.

The two defendants, appellants, were sworn in their own behalf and one Harry L. Stanley also testified as one of their witnesses. The defendants testified that their sister before the operation asked them to take charge of Elva and do whatever they could

for her, which they agreed to, and Elva decided that she wanted to go to Buffalo, and that she was put in school at Buffalo, and that they paid her expenses. The grandmother died in 1932.

Elva spent some of her summers with Stephen R. Gordon. Stephen R. Gordon testified that he never talked with anybody about the plaintiff. Stephen R. Gordon had charge of the funeral arrangements. He testified that he did not know the whereabouts of Mr. Clarke; that he consulted a lawyer who told him that Clarke had abandoned his family and wife years before and that that was all there was to it; that he never talked with Elva about her father at the time of her mother's death.

The burden was upon the plaintiff of proving his cause of action. There was no basis for the charge of enticement as the custody of the child was voluntarily surrendered to the mother and the plaintiff never made any attempt to get the custody of his daughter after the mother's death. He never demanded it, he never went to see her. The most he did was to send her letters by registered mail which she acknowledged receiving. She was seventeen years old.

The question for consideration is whether upon the undisputed and undenied facts the defendants-appellants herein, uncles of Elva Clarke, who were requested by her mother, when upon her death bed, to assume the care of Elva, wrongfully, willfully and maliciously kept her from her father's custody, admitting that after the mother's death the primary right of custody was in the father. The father had never at any time, after he knew the whereabouts of the daughter, made any attempt to see her or to have her at the trial or to have her examined.

There is a conflict in the evidence as to whether Stephen R. Gordon ever visited the Clarkes while they were at the Demarest House. Clarke denied on direct examination that he did, but after the testimony of Gordon and the other witnesses Clarke was not called to contradict their testimony.

From all the evidence in the case the plaintiff failed to establish the cause of action alleged in his complaint. He failed to show that either of the defendants enticed his child away from him or that they willfully, wickedly, wrongfully and maliciously, by force, duress, fraud and persuasion harbored the child against the consent of the plaintiff and in opposition to his efforts to obtain her from the defendants' custody. He made no attempt to obtain her; he made no attempt to see her. She acknowledged receipt of his letters, and when she wrote him in November, 1933, saying that she expected to see him at Christmas time, he did not answer the letter, and so she wrote him on December thirteenth saying that

she had decided that she did not care to see or communicate with him in any way.

The plaintiff failed entirely to sustain his cause of action. Clarke does not ask for the custody of his child and he has never asked for her custody.

The judgment should be reversed on the law, with costs, and the complaint dismissed, with costs.

HILL, P. J., McNAMEE, BLISS and HEFFERNAN, JJ., concur.

Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.